## SUPREME COURT.

MARY O'HARA and another agt. WILLIAM H. DUDLEY *et al.*

*Will — Residuary estate given absolutely to three persons — Letter of instruc tions to residuary devisees — Effect of — Secret and unlawful trust not established.*

The testatrix, desiring to devote the bulk of her estate to the furtherance of religious, educational and benevolent objects, and being apprised of the difficulty of legally reaching the ends proposed through express provisions in her last will and testament, made in her will an absolute and unconditional gift of her residuary estate to three persons, leaving also a letter of instructions to these residuary devisees and legatees. In this letter, which is not attested and is not referred to in the will, she said she relied upon them, immediately upon her decease, to take such measures as might be necessary to accomplish her wishes. She had been told that the devisees and legatees could spend every dollar in any way they saw fit, and that she must rely on their good faith and sense of right. The plaintiffs brought this action to set aside the residuary clause in the will, claiming that the letter of instructions is to be construed together with the will, and that the whole, form part of one plan to accomplish an illegal purpose, and that the devisees and legatees of the residuary estate take the same under unlawful and void trusts, and therefore, so far as the residuary clause is concerned, it is a fraud upon the heirs at law and next of kin.

*Held,* that the secret and unlawful trust, as alleged, is not established, and that the residuary clause of the will is valid as a devise and bequest.

*Special Term, September,* 1882.

*Starr & Hooker* and *Morris & Pearsall,* for plaintiffs.

*Bergen & Dykman,* for defendants.

VAN VORST, *J.* — As to the earnest wish of the testatrix to devote the bulk of her estate to the furtherance of the religious, educational and benevolent objects, and agencies, in which she seemed to have a deep personal interest, there can be no doubt. These interests, it is quite clear from the evidence, appeared to have a claim upon her bounty, in so far as

the disposition of her residuary estate was concerned, superior
to that of the plaintiffs, her grandchildren. She clearly so
thought, and acted accordingly. She earnestly urged upon
her counsel, who had prepared wills for her, before the one
under consideration, her wish to give the bulk of her estate
to charities, as she did upon the lawyer who prepared her last
testament. Although the specific objects she desired to foster
were, in a general sense, present to her mind, and were men-
tioned by her, yet the methods through which her benevolence
in their favor might be consummated were, in part at least,
vague and indefinite, and were difficult of being formulated
in a manner which would meet the exact demands of the law.
At least such was the opinion of the legal advisers, and she
was told by them that she could not legally reach the end pro-
posed by her, through the instrumentality of a last will and
testament.

The difficulty was overcome, as the testatrix evidently
believed or hoped, by an absolute and unconditional gift of
her residuary estate to the defendants, Dudley and McCue
and Robert I. McGuire, as joint tenants. These persons were
also constituted executors of her will, in which the gifts to
them was made.

Contemporaneously with the making and execution of
her will, there was prepared by the legal adviser of the testa-
trix, a writing, which was signed by her, in which she says:
"Having this day made a new will   *   *   *   I wish my
residuary legatees to consider the instructions heretofore given
by me as still in force. February 14, 1876."

The instructions referred to in this memorandum are con-
tained in a writing, signed by the testatrix the 8th day of June,
1875, on the occasion of her making a previous will. The
paper containing these instructions is addressed to the residu-
ary devisees and legatees by name, in which she, among other
things, says:

"I am desirous of accomplishing certain purposes, some
of which at least cannot be legally carried out by express

provisions in my will, and, therefore, in order more certainly to effect my purposes, I have constituted you as such residuary devisees and legatees, relying upon you that you will, immediately upon my decease, take such measures as may be necessary to accomplish my wishes."

These purposes, which are religious, charitable and educational, are distinctly mentioned in the paper. This paper, containing instructions, was prepared by judge McCue, who drew the will of that date, and was left by him, after its execution, with the testatrix, and was produced by him from the box of the testatrix before the surrogate of Kings county upon the occasion of the probate of the will. It does not appear that either of the residuary devisees and legatees other than judge McCue knew of the existence of this paper before the death of the testatrix, although they knew of the desire of the testatrix that a portion of her estate, should be devoted to charitable purposes.

Dudley, one of the devisees and legatees, testifies that he did not know until after the death of the testatrix that she had given anything to him, and that he had never directly or indirectly promised her to devote the bequest to him, to charity. That she had, however, asked him to act as an executor, and had told him that her executors would have sums left to them to be disposed of in charity at their discretion. The other devisee and legatee, McGuire, is dead, but it does not appear that he knew, before the testatrix's death, that he was one of the residuary legatees.

The testatrix was told in substance by the lawyer who prepared the will, that in order to accomplish her purposes, of which she had advised him, she must take one of two courses. One was to rely on the moral obligation and good faith of the persons she chose to confide in, to carry out her wishes, or to make a will that would raise serious questions as to its validity. She was told that the devisees and legatees could spend every dollar in any way that they saw fit; that

O'Hara agt. Dudley *et al.*

she must rely simply on their good faith and on their sense of right.

The defendant McCue had on previous occasions explained the matter to the testatrix, and the risk she ran. In speaking of the contemplated gifts to himself and the other devisees and legatees, he had told her that in his judgment, that was the only way in which her wishes could be carried out; that she would have to trust them; that it was, however, a pure matter of honor; that the devisees and legatees would in no sense be responsible or accountable to the beneficiaries; that they could pocket the money if they felt so disposed, and thus disappoint all her expectations. Her reply was, "that she thought she could trust them." He also told her that the letters of instruction were not a will or anything in its nature. And the learned gentleman who wrote this will says the entire will was read to the testatrix in the presence of the witnesses, and that he then told her that this made judge McCue and the other residuary devisees and legatees "absolute owners of the residuary estate, and that they could do what they pleased with it;" that the will gave the property absolutely, and that the letters of instruction had no legal effect.

It is now claimed on the behalf of the plaintiffs, who are the only surviving next of kin and heirs at law of the testatrix, that the devisees and legatees of the residuary estate take the same under secret, unlawful and void trusts, and that for such reason the gifts to them under the will are invalid, and that the next of kin and heirs at law are entitled to the residuary estate.

It is a general rule that an absolute devise of property cannot be changed by extrinsic evidence into a gift of an inferior nature, or be clogged with a trust. A last will and testament executed and attested with all the formalities of law is the highest and in general, the only expression of a testator's intention, with regard to the quality and extent of the testamentary gift which he has made.

It is a rule that if the intended disposition of property be

of a testamentary character, and not to take effect in the testator's lifetime, but ambulatory until his death, such disposition is inoperative unless it be declared in writing, in strict conformity with the statutory enactments regulating devises and bequests (*Lewin on Trusts, p.* 66). From which it follows that parol evidence cannot be received to convert a devisee under a will, in writing, into a trustee (*Perry on Trusts, sec.* 94).

The letters of instructions are not attested in the presence of witnesses, nor are they executed as a will, and can in no legal sense be regarded as a testamentary disposition of property. In the will itself, which is well executed, and which has been admitted to probate, no reference is made to these letters in any way. So that they cannot be regarded as any part of the testamentary disposition of which the will is the only evidence. And where even there is something on the face of a will which tends to show that the gift was not absolute, or that it was in trust, and the trust was not sufficiently declared, yet it would not be admissible to show, by a paper not signed and attested as a will, that a trust in favor of any particular person or object was intended. But in such case, it appearing by the will itself that the gift was in trust only, the property would descend to the heirs at law (*Addington* agt. *Cann,* 3 *Atk.,* 151 ; *Lewin on Trusts, supra*). But to the general rule that a trust cannot be created by a testamentary disposition, or by an instrument in its nature, except through the formalities required by the statutes respecting wills, there are exceptions, arising from cases of fraud. As in the case of one who seeks to secure to himself the succession of property by fraud and deceit practiced upon the testator, to the injury of one to whom the estate would have passed but for the fraud; under which circumstances the devisee or legatee, upon proof of the fraud, may be turned into a trustee, and be compelled to execute the disappointed expectation.

Another exception also arises in the case of a fraud upon

the law, meditated by a testator and a proposed devisee or legatee, sought to be effectuated, although the gift be absolute, through a secret arrangement or trust of an unlawful character, coincident with the execution of the will, by which the devisee or legatee engages to use or apply the property, to objects and purposes condemned by the law. In such case the secret trust can doubtless, be established by evidence *dehors* the will. Cases of this character have arisen in England, through dispositions of property attemped to be made by will, accompanied by secret arrangements in fraud of the statutes of mortmain, of which the following are illustrations: *Russell* agt. *Jackson* (10 *Hare*, 204); *Jones* agt. *Badley* (*L. R.*, 3 *Eq.*, 635); *Springett* agt. *Jennings* (*L. R.*, 10 *Eq.*, 488). But the case under consideration here, shows no attempt on the part of the devisees to defraud the testatrix. The whole subject was freely discussed between the testatrix and her legal devisers, one of whom was a devisee, and she made just such a disposition in the end as she intended.

There is not the slightest reason to believe, from the evidence, that any fraud or misrepresentation was practiced by the devisees or either of them, to obtain a gift in their favor to the prejudice of the next of kin or heirs at law of the testatrix. The property she attempted to dispose of was her own. She considered, under the evidence, the claims of her kindred. She gave legacies to the plaintiffs, and disposed of the residue of her property as she preferred. She gave to the residuary devisees and legatees her residuary estate absolutely in the clearest terms. It was her earnest desire and wish, however, that it should be used by them and applied to charitable purposes which she indicated. But she also comprehended that her expectations might be defeated through the absolute gift of the property to them; that as they took the property, by the terms of the will, unconditionally, they might use and spend it as their own without accountability to anyone.

There may be a moral obligation resting upon the devisee

who knew of the letters of instruction, who in fact drew them, to apply the property, in so far as he can control it, as the letters of instruction direct; but that is a subject addressed to the consciences of the devisees. But should they disregard the moral obligation arising from the facts and circumstances, I do not see that the beneficiaries have any stable grounds for legal or equitable relief against them founded upon the idea that they hold the property upon a trust which the courts can enforce.

" The averment of a trust was never permitted as against a devisee. A devise, as was resolved in Vernon's case, implies a consideration, and therefore cannot be averred to the use of another, for that, observes Lord Chief Baron Gillert, were an averment contrary to the design of the will appearing in the words " (*Lewin on Trusts*, 58; *Gilbert on Uses*, 162).

This conclusion in its scope, it appears to me, of itself, disposes of this case in opposition to the plaintiffs' contention. But it is proper, however, to consider the question as to whether the scheme of this will, with the letters of instruction, was concocted to defraud the law, or whether any statute would be violated by the application, through the devisees and legatees, of the moneys given to them to the purposes, or to secure the ends designed by the testatrix.

Whether the purpose is unlawful depends upon the object designed to be secured by the gift. That the views of the testatrix were vague and indistinct and incapable of being formulated so as to avoid question as to whether a court of equity could enforce them, and the object was sought to be reached through the discretion and judgment of those in whom confidence was reposed, is no fraud upon the law, and affords no good reason for turning an absolute devise into a trust for the purpose of adjudging it to be void as an attempt to evade a statute. Such a case is widely different from those arising under the English statutes of mortmain, which were direct attempts to evade statutes interdicting gifts to charities. And it also differs from the case of *Schultz's appeal* (80 *Penn. St.*, 396), in

O'Hara agt. Dudley *et al.*

which the claim was that although the bequest was absolute, yet it was the testator's expressed intention that the moneys so given should be applied by the legatee to charitable uses. By a statute of Pennsylvania testamentary gifts to charities were declared to be invalid if the will was executed within thirty days of the testator's death. In that case the attempt clearly was to evade the statute. The testator died within thirty days after making the will. That case was decided against the heirs and next of kin upon the ground that the legatee was ignorant of the testator's intention as to the manner in which the moneys were to be applied, and had not assented to the arrangement before the testator's death. But judge SHARSWOOD, in the course of his opinion in that case, suggests that if the legatee had known the testator's intention, and had agreed to take the bequest for such charitable uses, it would have been void under the statutes, and the property would, by force of the same, have gone to the heirs and next of kin of the testator.

The real vice in all these cases, therefore, is that gifts were in fact made to charities which were interdicted by statutes.

In this state there exist statutes similar to the Pennsylvania law, but there is no claim here that any such statute is violated by the will under consideration. There is no law of this state which prohibits testamentary gifts for the education of poor young men for the priesthood, nor for the purchasing of shoes for poor children attending parochial schools connected with any religious society; nor for any of the benevolent purposes in testatrix's mind, and mentioned in the letters of instruction.

It is quite true that as strict trusts, if contained in a will, from the terms used, a court of equity might find it difficult to enforce them, and might not for that reason uphold one or more of them. But the conclusive answer to that suggestion is embraced in what has been already stated, that they are not trusts contained in a will, and are not to be sustained

as testamentary dispositions. Addressed as they are to the consciences of the devisees and legatees they may or may not be carried out. Whether they are or are not will depend upon the power of the moral obligation, under which the devisees or either of them rests.

But it is urged on the plaintiffs' behalf that it was the intention of the testatrix to create a perpetuity, and to institute trusts which are not allowed by statute, and that the letters of instructions indicate her wishes and purpose in that regard. But I cannot think that the conduct and action of the testatrix was the outcome of any such intention. The discussions between the testatrix and Mr. Cullen, the lawyer who prepared the will, after receiving her instructions, do not appear to have touched those subjects.

According to the testimony of judge CULLEN, the testatrix wanted the money to go to certain charities. He told her, in substance, that she could not accomplish her purposes by a will. Some of these purposes were the education of certain persons for the priesthood. The difficulty in the mind of the counsel was, that unless the object of the charity was well defined, or unless there was a corporation in existence competent to take, a legacy for such purposes would be void, and that it was questionable whether words merely precatory would create a trust. It seems to have been believed that some of the organized charities, the testatrix wished to favor, were unincorporated. There is no statute which interdicts testamentary gifts to voluntary associations. But, as fluctuating bodies, courts of equity find it difficult to deal with them or enforce trusts in their favor, and devises and bequests to them have been held to be void.

The testatrix, while living, could have directly given moneys to unincorporated societies for charitable purposes, and the moneys would have been legally received and could have been retained and applied. There are cases where gifts of money for purposes condemned by law may be recovered back, and had it been within the contemplation of the testa-

O'Hara agt. Dudley *et al.*

trix to foster, through her testamentary gifts, by indirection, immoral purposes, or such as are directly forbidden by statute, a case wholly different would be presented. That the testatrix earnestly wished and believed that she had cast upon her devisees and legatees a moral obligation, through her gifts to them, to sustain voluntary associations organized for charitable ends, cannot be positively illegal.

It is said in the letters of instructions that the residuary legatees and devisees should keep in mind the earnest desire of the testatrix to secure for herself and family the benefit of the "Holy Sacrifice of the Mass," and that they should enjoin and impose, so far as they could, the obligations upon the recipients of the moneys. These at best are but precatory words, and do not in terms or in legal effect amount to a trust.

In a case of this character, where it is sought to raise a trust, or trusts upon an absolute devise, for the purpose of defeating it, as a fraud upon statutes, the intention of the parties must be fairly considered, and the letters of instructions must be read in the light of all that was said upon the subject at the time it was prepared and executed. And we are not called upon to characterize this transaction as a fraud upon the statute, or as a conspiracy to cheat the law, where the matter is explicable upon grounds, as we think it is, which do not show such design.

Limited by the wish that the devisees and legatees should use the moneys for the charitable purposes above indicated, the evidence shows that the largest discretion was designed to be exercised in the application of the moneys. This may, and we may presume will, be accomplished if the residuary devisees and legatees yield to the force of the moral obligation, without violating any statute.

The conclusion reached is that the secret and unlawful trust, as alleged, is not established, and that the residuary clause of the will is valid as a devise and bequest.

By this conclusion the plaintiffs, the heirs-at-law and next of kin of the testatrix are disappointed in not securing what

they supposed was not well given away. But the testatrix, if the conclusion reached is correct, had the legal power to make her will in the way she selected.

It is not in the power of this court to correct the conclusions or judgment of a testator as to the disposition of his property, nor to defeat his will in that regard, so long as the dispositions made, are valid in the law. The reasons which influence men in turning their property in one direction rather than another, are not open to investigation in legal tribunals, so long as they possess testamentary capacity, and the dispositions made are not invalid and fraud and undue influence are absent.

There must be judgment for the defendants, dismissing the plaintiffs' complaint, but without costs.